# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL STEVEN KING,<br><br>Plaintiff,<br><br>v.<br><br>SGT. DEATHRIAGE, et al.,<br><br>Defendants. | Case No. 1:14-cv-00111-LJO-SAB-PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF Nos. 41, 42, 43)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

Plaintiff Michael Steven King is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Currently before the Court is Defendants' motion for summary judgment, filed on November 9, 2015.

**I.**

**PROCEDURAL HISTORY**

This action is proceeding on the complaint filed January 27, 2014. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR), brings this action against Defendant correctional officials employed by the CDCR at Pleasant Valley State Prison, where the events at issue occurred. On August 26, 2014, an order was entered, finding that the complaint stated a claim for relief against Defendants Deathriage, Martinez, and Briones for excessive force, and against Defendant Angulo for denial of medical care, in violation of the Eighth Amendment. On October 6, 2014, Plaintiff notified the Court of his intention to dismiss

1

the remaining Defendants. (ECF No. 10.) On October 9, 2014, an order was entered, dismissing the remaining claims and Defendants. (ECF No. 11.) The complaint was served, and on November 9, 2015, Defendants Deathriage, Martinez, Briones, and Angulo filed the instant motion for summary judgment. (ECF No. 41.) Plaintiff has opposed the motion. (ECF No. 42.) Defendants have filed a reply. (ECF No. 43.) Along with their motion, Defendants served Plaintiff with the notice required by Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at its conclusion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

Plaintiff alleges that on March 21, 2013, during the evening meal release, C/O Martinez ordered Plaintiff to roll his pant leg down as he approached the door. Plaintiff complied and continued to exit the building along with the other inmates. C/O Martinez then directed the control tower officer to close the rotunda gate and began trying to get Plaintiff's attention. Once Plaintiff realized C/O Martinez was calling him, he walked back toward C/O Martinez. Plaintiff was surrounded by C/O Martinez, C/O Briones, and Sgt. Deathriage. Martinez ordered Plaintiff to face the wall and began to conduct a clothed body search. Martinez ordered Plaintiff to sit down, remain facing the wall and remove his shoes. Plaintiff complied and placed one of his shoes behind him near Sgt. Deathriage.

Deathriage then stated "don't be tossing your f***ing shoe. It almost hit me. I'll slam your face into that wall and smash your skull." Plaintiff replied, "no you won't without getting a 602." Before Plaintiff could finish his statement, Deathriage "wrestled Plaintiff to the floor from a sitting position to a prone position" and struck Plaintiff in the head with his knee. Briones and Martinez joined Deathriage and began striking Plaintiff in the head with their knees. At one point, Plaintiff heard one of the officers state, "I'm hit in the nuts. Get him and hit your alarm." Other C/Os responded and escorted Plaintiff to the program office where he was placed in a holding cage.

LVN Angulo conducted a medical examination of Plaintiff. Plaintiff complained about

1  excruciating pain in his jaw and bleeding from a laceration on his arm.  Plaintiff alleges that
2  Angulo ignored him as well as refused to document Plaintiff's complaints on the CDCR 7219
3  form or provide Plaintiff with any medical treatment."  Plaintiff was then placed in
4  Administrative Segregation.

**B. Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992)(citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010 (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citations omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Defendants support their motion with the following undisputed facts.[1]

1. On March 21, 2013, Plaintiff Michael Steven King was housed at Pleasant Valley State Prison in Building 1, Facility B. (Ex. A, Crime Incident Report at 2.)  That evening, Officers Martinez and Briones were helping to release inmates in Building 1 from their cells so they could go to the cafeteria.  (Ex. A, Crime Incident Report at 2, 8, 10; Ex. B, Decl. of I. Martinez ¶¶ 1, 2, Ex. C, Decl. of R. Briones ¶¶ 1, 2.)

2. As the inmates were leaving the building, Officer Martinez ordered King to roll down

---

[1] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 56-260(b).  Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

1    his pant legs, which were rolled up above his ankles. (Ex. A, Crime Incident Report
2    at 2, 8, 10, 12; Ex. B, Decl. of I. Martinez ¶ 2; Ex. C, Decl. of R. Briones ¶ 2.)  King
3    walked out of the building. (Id.)  Martinez then ordered Plaintiff to come back and
4    face the correctional counselor's office so he could conduct a pat search of King.
5    (Id.)

6  3. As Officer Martinez conducted the pat search, King became increasingly
7    argumentative and agitated. (Ex. A, Crime Incident Report, at 2, 10, 12; Ex. D, Decl.
8    of S. Deathriage ¶ 3.)

9  4. When Officer Martinez finished the pat search, he ordered King to sit down facing
10   the correctional counselor's office and to remove his shoes. (Ex. A, Crime Incident
11   Report at 2, 8, 10, 12; Ex. B, Decl. of I. Martinez ¶ 3; Ex. C, Decl. of R. Briones, ¶ 2.)
12   King removed his shoe, and it ended up near Sergeant Deathriage, who was standing
13   nearby observing the search. (Ex. A, Crime Incident Report at 2, 8, 10, 12; Ex. B,
14   Decl. of I. Martinez ¶ 3; Ex. C, Decl. of R. Briones, ¶ 3; Ex. D, Decl. of S. Deathriage
15   ¶ 3.)

16 5. Sergeant Deathriage ordered King not to throw his shoes. (Ex. A, Crime Incident
17   Report at 2, 8, 10, 12; Ex. B, Decl. of I. Martinez ¶ 4; Ex. C, Decl. of R. Briones ¶ 4;
18   Ex. D, Decl. of S. Deathriage P 3.)

19 6. Sergeant Deathriage ordered King to submit to handcuffs. (Ex. A, Crime Incident
20   Report at 2; Ex. D, Decl. of S. Deathriage ¶ 4.)  King did not place his hands behind
21   his back as is customary when submitting to handcuffs. (Ex. D, Decl. of S.
22   Deathriage ¶ 4.)  Sergeant Deathriage then placed his hand on King's right hand and
23   attempted to place it behind his back so that he could handcuff him. (Ex. A, Crime
24   Incident Report at 2, 8, 10, 12; Ex. C, Decl. of R. Briones ¶ 4; Ex. D, Decl. of S.
25   Deathriage ¶ 4.)  As Sergeant Deathriage was attempting to move King's hand, King
26   turned, jerked out of his grasp, and struck him in the groin. (Ex. A, Crime Incident
27   Report at 2, 8, 12; Ex. C, Decl. of R. Briones ¶ 4; Ex. D, Decl. of S. Deathriage ¶ 4.)

28 7. Upon seeing King strike Sergeant Deathriage in the groin, Officer Briones activated

1     his personal alarm, which signifies an emergency and summoned staff for assistance.
2     (Ex. A, Crime Incident Report at 2, 8; Ex. C, Decl. of R. Briones ¶ 5.)

3  8. Sergeant Deathriage then ordered King to get down, and he refused. (Ex. , Crime Incident Report at 2; Ex. D, Decl. of S. Deathriage ¶ 5.) Sergeant Deathriage then placed his right hand on King's right shoulder and his left hand on the middle of King's back. (Ex. A, Crime Incident Report at 2; Ex. D, Decl. of S. Deathriage at ¶ 5.) Using his upper body, Sergeant Deathriage forced King into a prone position on the floor. (Id.)

9. In order to regain order and to assist in safely handcuffing King, Officer Martinez grabbed King's right leg with his hands to hold it to the ground, and Officer Briones used both his hands to control King's legs by forcing them to the ground so that he could be placed in handcuffs. (Ex. A, Crime Incident Report at 2, 8, 10; Ex. B, Decl. of I. Martinez ¶ 6; Ex. C, Decl. of R. Briones ¶6; Ex. D, Decl. of S. Deathriage ¶ 5.)

10. When King was restrained, Officer Martinez placed him in handcuffs. (Ex. A, Crime Incident Report at 2, 8, 10; Ex. B, Decl. of I. Martinez ¶ 6; Ex. C, Decl. of R. Briones ¶ 6; Ex. D, Decl. of S. Deathriage ¶ 5.)

11. King was facing the correctional counselor's office, and then was placed in a prone position, and could not see what was going on behind him. (Ex. B, Decl. of I. Martinez ¶ 2; Ex. C, Decl. of R. Briones ¶ 2; Ex. E, Dep. of King at 16:5-17:6, 18:3-7.) King could not see which officers were involved in restraining him, nor what actions specific officers were taking. (Ex. E, Dep. of King at 16:5-17:6; 18:3-7; 23:22-24.)

12. After King was handcuffed, Officer Gonzales, who had responded to Officer Briones's personal alarm, escorted him to the program office and secured him in a holding cell. (Ex. A at 9.)

13. Officer Martinez used a minimal amount of force to safely place King into handcuffs. (Ex B, Decl. of I. Martinez ¶ 8.)

14. Officer Briones used a minimal amount of force to de-escalate King's resistive

1 behavior and to safely place King into handcuffs.  (Ex. C, Decl. of R. Briones ¶ 8.)

2 15. Sergeant Deathriage used a minimal amount of force to de-escalate King's resistive behavior, prevent King from injuring him, and to safely place King into handcuffs. (Ex. D, Decl. of S. Deathriage ¶ 8.)

16. Defendant Angulo completed a medical assessment after the incident and noted that Plaintiff had no injuries.  (Ex. A, Crime Incident Report, Medical Report of Injury or Unusual Occurrence at 13.)

17. Plaintiff admits that any injuries he sustained as a result of the incident were minor. Plaintiff's alleged injuries include several scratches on his arm that would have needed only a Band-Aid, and jaw pain that had gone away several hours later. (Ex. E, Dep. of King at 28:8-19; 31:24-32:12.)  Plaintiff already had a prescription for 600 milligrams of ibuprofen, which would have been the only medical treatment appropriate for any jaw pain he experienced.  (Ex. E, Depo. of King at 29:14-30:1; Ex. F, Decl. of B. Barnett ¶ 14.)

Defendants argue that the undisputed facts establish that, although they subjected Plaintiff to the use of force, they did so because Plaintiff became disruptive and failed to comply with orders.  Defendants argue that because Plaintiff became disruptive and failed to comply with orders, Defendants reasonably perceived Plaintiff as a threat.  Defendants contend that Plaintiff first became agitated when Defendant Martinez counseled him about not complying with the order to roll down his pant legs. Plaintiff then became more agitated when Defendant Deathriage counseled him about throwing his shoe, and failed to submit to handcuffs when Defendant Deathriage asked him to do so.  When Defendant Deathriage attempted to place Plaintiff in handcuffs, Plaintiff struck him in the groin and then disregarded Defendant Deathriage's order to get down.  Defendants argue that in light of these facts, Defendants Briones, Martinez, and Deathriage reasonably perceived Plaintiff as a threat.

Defendants also argue that the undisputed facts establish that they used only the minimal amount of force necessary to maintain control of Plaintiff.  The undisputed evidence establishes that when Defendant Deathriage ordered Plaintiff to submit to handcuffs, he did not comply with

7

1 the order. (SUF No. 6.) As Defendant Deathriage attempted to move Plaintiff's hands in order
2 to place him into handcuffs, Plaintiff turned, jerked out of his grasp, and struck Defendant
3 Deathriage in the groin. (SUF No. 6.) Defendant Deathriage ordered Plaintiff to get down, and
4 Plaintiff refused. (SUF No. 8.) Defendant Deathriage then placed his right hand on Plaintiff's
5 right shoulder and his left hand on the middle of Plaintiff's back. (SUF No. 8.) Using his upper
6 body, Defendant Deathriage forced Plaintiff into a prone position on the floor. (SUF No. 8.)
7 Officers Martinez and Briones forced Plaintiff's legs to the ground, and Officer Martinez placed
8 Plaintiff in handcuffs. (SUF Nos. 9, 10.) This was done to regain order and to safely Place
9 Plaintiff in handcuffs. (SUF Nos. 13-15.) A medical assessment was conducted, and no injuries
10 were noted. (SUF No. 16.) Plaintiff admits that his only injuries were several small scratches on
11 his arm and jaw pain that subsided that same day, indicating that the amount of force used was
12 minimal. (SUF No. 17.) Defendants needed to take control of and stop Plaintiff's disruptive
13 behavior. (SUF Nos. 4, 5, 6, 8, 9.) To gain compliance, Plaintiff was handcuffed and escorted
14 out of the building. (SUF Nos. 10, 15.)

15     The Court finds that Defendants have met their burden on summary judgment.
16 Defendants have come forward with evidence that establishes that force was used on Plaintiff
17 after he refused to comply with Defendant Deathriage's order to submit to handcuffs, after he
18 struck Defendant Deathriage in the groin, and refused Defendant Deathriage's order to get down.
19 In an effort to gain compliance with lawful orders and to diffuse a potential threat, Defendants
20 placed Plaintiff in handcuffs and escorted him from the housing unit with minimal injuries.
21 Defendants have met their burden of informing the court of the basis for the motion and
22 identifying the evidence which they believe demonstrates the absence of a genuine issue of
23 material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

24     The burden now shifts to Plaintiff to establish that a genuine issue as to any material fact
25 actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586
26 (1986). Plaintiff's opposition consists of two pages of oral argument, supported by the
27 declarations of two inmates and a copy of the investigative employee's report regarding the event
28 at issue. Plaintiff also submits a copy the CDCR Form 7219, Medical Report of Injury, dated

March 21, 2013. The Court also considers Plaintiff's complaint as a declaration.[2]

While Defendants contend that Plaintiff did not roll his pants down in response to Defendant Martinez' order, Plaintiff contends that he did comply with the order. (Compl. at ¶ 3.) Plaintiff also states that he did not throw his shoe, but placed it on the ground behind him. (Compl. at ¶ 5.) At this point, Plaintiff alleges that Defendant Deathriage accused Plaintiff of throwing his shoe at him and told him he was going smash Plaintiff's face into the wall and smash his skull. (Compl. at ¶ 5.) When Plaintiff told Defendant Deathriage that he would file a 602, Defendant Deathriage wrestled Plaintiff from a sitting position to a prone position and struck Plaintiff in the head with his knee. (Compl. at ¶¶ 6, 7.) Plaintiff alleges that Defendants Briones and Martinez joined Deathriage in striking Plaintiff with their knees. (Compl. at ¶ 17.)

In his opposition, Plaintiff argues that he never tossed a shoe at any of the defendants. (ECF No. 42 at 1.) Plaintiff refers to his Exhibit B, indicating that it states Plaintiff was hit and rushed when he was seated facing away from the Defendants. Exhibit B is a copy of an Inmate Witness Statement as a part of the investigative employee's report of the event at issue. The witness, inmate Bell, responded in the affirmative to the question: "did you see the Correctional Officer's [sic] jump on inmate King, F-27519, for no reason while he was sitting down facing away from the correctional officer?" This limited information provides little to enlighten the Court on the present motion. There is no information on where the inmate was or what he was able to observe of the incident at issue.

Plaintiff's Exhibit A includes the declarations of inmates Damion Johnson and Horatio Jones. Both inmates declare that they saw yard officers rushing to the scene. Neither of them indicate that they observed anything regarding the incident, other than Plaintiff being escorted to the program office barefoot and in handcuffs; and Plaintiff appeared to have some swelling to the right facial area and a swollen jaw. (Decl. of Damion Johnson at 2; Decl. of Horatio Jones at 2.)

---

[2] "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" Keenan v. Hall, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting McElyea v. Babbitt, 833 F.2d 196, 197-98 n. 1(9th Cir. 1987) (per curiam)), amended by 135 F.3d 1318 (9th Cir. 1998); see also Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132 (n. 14 (9th Cir. 2000).

9

Defendants argue that in his deposition, Plaintiff clarifies that he was not in a position to see who was pressing on his back with their knees. (King Depo. 38:18.) In response to a question regarding whether any of the Defendants placed a knee on Plaintiff's back, Plaintiff testified that "I'm not positive, but I believe so, yes." (Id. 39:3.) Plaintiff was specifically asked, "the way they cuffed you, was it anything out of the ordinary about how they put the cuffs on you?" Plaintiff answered no. Plaintiff was then asked, "because clearly, to get handcuffs on somebody, you need to use a little force to get the arms into the cuffs and that kind of thing. It was just there was no continued kicking at that point or biting or anything?" (Id. 39:8-11.) Plaintiff answered no. However, Plaintiff's allegation is that while he was complying with Defendant Martinez' orders to remove his shoes, Defendants threw him to the ground and began striking him for no reason. In resolving a defendant's motion for summary judgment, the court is to draw all reasonable inferences in favor of Plaintiff, the non-moving party, Samuels v. Holland American Line-USA, Inc., 656 F.3d 948, 952 (9th Cir. 2011); Ward v. Ryan, 623 F.3d 807, 810 (9th Cir. 2010), and liberally construe the filings and motions of pro se litigants, Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury, not the judge. Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011). Therefore, whether Plaintiff was complying and the use of force was malicious and sadistic to cause harm or if the use of force was necessary to restore order because Plaintiff was non-compliant is an issue to be decided by the trier of fact. The Court finds that Plaintiff has met his burden to establish that a genuine issue of material fact exists. Defendants' motion for summary judgment on the claim that Defendants use of force violated the Eighth Amendment should be denied.

**C. Medical Care**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 11222 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

The parties submit the medical report of injury completed by Defendant Angulo. This shows that Defendant Angulo found no injuries and indicates that when asked to describe his injuries Plaintiff replied, "no comment." (ECF No. 41-3 at 14.) There is a check mark to Plaintiff's right arm. (Id.) Defendant Angulo argues that Plaintiff cannot demonstrate deliberate indifference to his serious medical needs. Plaintiff admits that the only injuries he sustained in the alleged incident were several scratches on his arm, and jaw pain. (SUF No. 17.)

According to Plaintiff, the scratches were not large and needed nothing other than a Band-Aid and some antiseptic. (Id.) The jaw pain that Plaintiff experienced was gone by the time he was moved from the holding cell to administrative segregation later that same day. (Id.) The appropriate treatment for jaw pain would have been a pain reliever, which Plaintiff already had a prescription for at the time of the incident. (Id.) Defendants have met their burden of informing the court of the basis for the motion and identifying the evidence which they believe demonstrates the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.

Defendants have come forward with evidence establishing that Plaintiff did not suffer from an objectively serious medical condition. Defendants submit the declaration of B. Barnett, M.D., who is the Chief Medical Consultant for the Receiver's Office of Legal Affairs. (ECF No. 41-8.) Dr. Barnett has reviewed Plaintiff's complaint and medical records in this action. (Decl. of Barnett at ¶ 8.) Plaintiff's medical records demonstrate that prior to the incident at issue here,

11

Plaintiff had been receiving treatment for migraine headaches and was prescribed medication as needed for pain. (Decl. of Barnett at ¶ 12.) On the date of this incident, March 21, 2013, Plaintiff was examined by medical personnel and had an evaluation for mental health criteria. (Id.) An administrative segregation unit psychiatry intake was performed from March 22-24, 2013 which noted no abnormalities documented in statements by Plaintiff or observations of Plaintiff. (Id.) On May 24, 2013, Plaintiff complained of feeling dizzy and seeing light flashes since he had been kneed by the officers and wanted to make sure nothing was wrong. (Id.) Plaintiff had an assessment on March 25, 2016, and was complaining of headaches for 4 weeks on and off. (Id.) The examination was unremarkable and Plaintiff was instructed to continue his medications as needed. (Id.) A progress note on April 9, 2013, notes Plaintiff is complaining of knee pain for one week since hitting knee getting off his bunk. (Id.)

By Plaintiff's own admission, after this incident he suffered from scratches and jaw pain, for which he already had a prescription. The medical record demonstrates no further complaints of jaw pain or complications from the scratches he received. Based upon the evidence before the Court, Plaintiff has not shown that Defendant Angulo was deliberately indifferent to a serious medical need of Plaintiff's. Further, Plaintiff's Exhibit C indicates that he was examined by Defendant Angulo on the date of the incident. Plaintiff offers no evidence to the contrary and argues that Defendant Angulo did not mark any of his injuries on the form. The Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)). Failing to note Plaintiff's injuries on the examination form without more is insufficient to find that Defendant Angulo was deliberately indifferent to a serious medical need and failed to respond. Plaintiff has not met his burden to show that a genuine issue of material fact exists as to his deliberate indifference claim against Defendant Angulo.

Judgment should therefore be entered in favor of Defendant on Plaintiff's claim of deliberate indifference to serious medical needs.

# IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be GRANTED IN PART AND DENIED IN PART as follows:

    a. Defendants Deathriage, Martinez, and Briones's motion for summary judgment on the Eighth Amendment excessive force claims be DENIED;

    b. Defendant Angulo's motion for summary judgment on the Eighth Amendment deliberate indifference claim be GRANTED; and

2. Judgment be entered in favor of Defendant Angulo on the Eight Amendment deliberate indifference claim.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of 28 U.S.C. §636 (b)(1)(B). Within **twenty-one (21)** days after being served with these finding and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.2d F.3d 834, 838-39 (9th Cir. 2014)(citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 18, 2016**

UNITED STATES MAGISTRATE JUDGE